IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SHOSHANA JAVITS AND HAIM JAVITS, | ) ) ) | |
| PLAINTIFFS, | ) ) | |
| V. | ) ) | Case No:  :13-CV-00487-WSD |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| DEFENDANT. | ) ) | |

## AFFIDAVIT OF BRUCE FREDRICS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, BRUCE FREDRICS, who after being first duly sworn, deposes and states as follow:

1.

I am more than 18 years of age and suffer from no legal disability.  The contents of this Affidavit are based upon my own personal knowledge.

2.

I am a licensed public adjuster.  My license is valid in several States, formerly including Georgia in 2012 and 2013.  I have about 18 years working as an adjuster for insurance companies adjusting property insurance claims.  I have 2 years working as a public adjuster.

3.

I have the following credentials:  Property and Casualty Adjuster's and Producer's License, Certified General Adjuster, Associate in Claims Designation, Certified Claims Adjuster Designation, Property Loss Claims Associate Designation, Legal Principles Claims Specialist Designation, HAAG Engineering Roofing Inspector Designation, National Flood Insurance Program Certification, Florida Wind Association Umpire Certification, Earthquake Certification, Florida Windstorm Underwriting Association Certification, Business Interruption course Certificate, and Construction Sub-contractor's License.  I am a Property Loss Claims Expert, a Large Loss Specialist, and a multi-lines claims adjuster.

4.

I use the same computer software that insurance companies use for preparing estimates called Xactimate.

5.

Xactimate's system uses average industry pricing for any given type of construction or repair work.  What this means is if I make an estimate for the repair of a countertop, my estimate and the estimate of the insurance company should be approximately the same assuming no errors in measurements taken at the property.

6.

As part of my training and qualifications to inspect fire claims, I have been trained to identify smoke damage.

7.

I have learned through my training and experience that smoke and soot residue from a fire will come to rest on surfaces leaving, at the very least, trace particulate matter on surfaces which may not be visible to the naked eye and, whether you can see it or not, must be cleaned and deodorized in order to remove the smell and film.

8.

Mere visual inspection does nothing to reveal trace elements of smoke residue.

9.

There is a difference between "wet soot" and "dry soot". Fires from cooking oil produce a wet, sticky soot, called "wet soot". Burned wood produces a "dry soot." Both wet and dry smoke leave trace or microscopic contaminants by particulate matter or residue or both, which also contribute to odor and film.

10.

Although dry soot may be cleaned with a chemical sponge, "wet soot" permeates porous surfaces, and cannot be cleaned with a chemical sponge. Cleaning wet smoke residue can and does mar surface finishes. Damaged surfaces must be re-surfaced to eliminate the odor and film.

11.

Wet soot from a grease fire, which is oily, cannot be cleaned from a flat finish paint.  The residue permeates the orifices.  You can wipe off some of it, but upon wiping it, the paint can become marred.  Also, cleaning chemicals can cause further damage.  As a result, with protein/grease fires, the preferred method to remove odors is to seal the paint and then paint over it.

12.

On or about May 3, 2012, Plaintiffs Shoshana Javits and Haim Javits retained me as their public adjuster on their claim with State Farm Fire and Casualty Company, said claim being the subject of this lawsuit.

13.

Attached hereto as **Exhibit A** is a true and correct copy of all relevant correspondence between myself and State Farm representatives regarding this claim.

14.

I inspected the property on or about May 3, 2012, nearly one month after the date of loss.  During the inspection, Mr. Javits advised me that this was a cooking oil fire and that the home filled with smoke during and after the fire.  Mr. Javits advised that all the doors to the other rooms in the house, with the exception of the hall closet and garage were open at the time of the fire.  I observed obvious smoke residue staining the ceiling and walls in the kitchen, with a dark tinge color.  Mr. Javits reported that Ms. Javits had attempted to clean several of the walls in the home before

my inspection.  Based on my observations of the damages and those relayed to me by Mr. Javits it was apparent to me that the damage she sustained was consistent with a grease fire, where you would expect to see "wet soot" of oily type throughout open areas of the home and in my opinion justified the cleaning expenses included in my estimate.  There was an obvious smokey odor throughout the home.

15.

On or about May 24, 2012, I submitted my estimate of the costs to repair and/or replace and to clean structural damages to the property.  I also prepared a separate estimate for cleaning of personal property contents.

16.

Although I had seen other estimates for repairs submitted by the Javits to State Farm in support of their claim, I did not rely upon them in making my estimate.  My estimate was calculated using Xactimate's pricing methodologies.

17.

The insureds' policy promises indemnity which means that like items must match as a group just as they did prior to their damages.

18.

My estimate is consistent with all of the necessary repairs that are required to provide proper indemnity to the Javits whereas State Farm's estimates include only a partial repair of the cabinetry, resulting in mismatched cabinets in the Javits' kitchen where they previously had matching cabinets.

19.

The policy covers for the costs of cleaning, repair and/or replacement of contents in the event of a fire.

20.

I included the costs to clean in my estimate even though Ms. Javits had done some cleaning because Ms. Javits is entitled to have a thorough professional cleaning. Even if the cleaning was sufficient, she is entitled to be compensated the fair value of her time involved in having had to clean herself.

21.

After receiving my estimate, on or about May 31, 2012, State Farm adjuster Andrew Morris and I had a telephone conversation wherein he categorically rejected my entire estimate without specifying any particular line items that he disputed.  Mr. Morris expressed at that time that he would not change his estimate at all and that the insureds must accept his estimate or get nothing.  Mr. Morris called my estimate "over kill" and stated that he intended to bring a third party contractor to the property for the specific purpose of proving that my estimate was wrong.  There was no offer to review my estimate with me to identify any specific line items that Sate Farm disagreed with. Normally in the practice of adjusting claims, when a public adjuster submits an estimate to the insurance company for review, the insurance company respond with a request to "walk the loss" to go over any specific objections they have with the

estimate.  This was never offered by Mr. Morris, and in fact, Mr. Morris made it very clear that he was not going to consider my estimate at all under any circumstances.

22.

As a result of my telephone conversation with Mr. Morris on May 31, 2012, pursuant to the terms of the policy, Plaintiffs demanded appraisal on or about June 13, 2012 since it was clear by Mr. Morris' statements that there was no hope of any agreement on the amount of the loss.

23.

In response to Plaintiffs' demand for appraisal, Mr. Morris sent a letter dated June 20, 2012 rejecting the appraisal demand.  Mr. Morris claimed that the "disagreement has to do primarily with scope of repairs" and that he is "willing to meet with [me] and a fire mitigation and restoration company at the loss location to review and determine if there is anything additional that I need to consider in my scope."  He also stated that there "is an independent contractor that has looked at the loss and is able to complete the work based off my estimate".  The letter also stated that "we are unable to consider the request for appraisal as it doesn't apply to scope of repairs".  This letter effectively is an attempt to substitute himself as an appraiser instead of going through the appraisal process.

24.

Mr. Morris' June 20, 2012 letter did not demand an inspection but merely expressed that he was "willing" to meet at the property with a fire mitigation and

<u>restoration company.</u>  At the time of this letter, State Farm had already inspected the loss twice, at least once with Georgia Fire & Restoration.  Mr. Morris had made it clear in our May 31, 2012 phone conversation that the true purpose of a re-inspection would be to prove me wrong, rather than to perform a good faith review of the damages and my estimate of the damages.  I considered this offer to be made in bad faith and Mr. Morris' conduct made it impossible to resolve the dispute.  This was really an attempt by Mr. Morris to have a one sided appraisal.

25.

Had Mr. Morris been willing to inspect the loss with me by himself to go over my estimate, rather than with a third party, I would have seen this as a good faith effort to try to negotiate and resolve the claim and appraisal may not have been necessary.  His intentions were made clear by his unwillingness to give any due consideration whatsoever to my estimate.

26.

Based upon Mr. Morris' conduct and because State Farm was refusing to honor the appraisal demand, I recommended that the Javits' seek legal counsel.

27.

On or about July 24, 2012, I received the first "demand" from State Farm's attorney, Donna Overholt Willis, for a third inspection.

28.

On July 24th, 2012 in response to Ms. Willis' July 24th, 2012 request for a third inspection, I notified Ms. Willis that the Javits had consulted with legal counsel to represent them on the claim going forward and to expect a letter of representation from counsel.

29.

On July 26, 2012, I notified Ms. Willis that the Javits' had consulted with legal counsel and were in the process of executing the retainer agreement to hire counsel.

30.

On July 31, 2012, I sent a final email to Ms. Willis notifying her that counsel had been retained by the Javits and explained that I would not be responding to the July 24, 2012 letter.

31.

The Javits did not refuse to allow the July 24, 2012 request for third inspection but instead deferred communications to their attorney.

32.

After July 31, 2012, I allowed counsel to handle the claim on behalf of the Javits.   With the exception of one final communication with Andrew Morris on disputing State Farm's position taken on appraisal in October 2012, I had no other communications with State Farm about the claim until my deposition in the case.

33.

In my professional opinion, State Farm's interpretation of the appraisal provision is an unreasonable interpretation.  State Farm's position is that before they will agree to appraisal:  1) policyholders must agree with their scope; and 2) Then appraisal will be used to resolve a price/cost dispute.  This interpretation renders the appraisal clause meaningless because if there is an agreement on scope, then the value of the loss will be the same since most evaluations by adjusters (public and insurance company) are completed in Xactimate using the same pricing methdology.  Generally, disputes over the "Amount of Loss" are the result of disputes over Scope, not price, since pricing is generally universal with everyone using Xactimate to calculate loss amounts.  Estimators use very similar pricing defined by industry standards, so price almost never the basis of disagreement.  Disagreement with Scope is what causes a disagreement in the "Amount of Loss", as defined in the Appraisal clause, for the large majority of claims involving value disputes.

34.

In my professional opinion, State Farm did not act reasonably during each phase of the claim handling procedures because State Farm: 1) failed to adequately and thoroughly investigate the damages and ignored smoke damages pointed out by Ms. Javit's as well as her description of the house filling with smoke; 2) offered a low-ball estimate that was inadequate for proper restoration of the loss and damage; 3) knowingly misrepresented relevant facts or policy provisions related to coverage by insisting that the policy only covered partial repairs, 4) continued to insist that it could

not independently arrive at an estimate for full replacement costs of damages such as cabinets and countertops just because Plaintiff had submitted estimates that contained some upgrades and despite Mr. Fredrics' estimate not containing such upgrades, 5) by not attempting in good faith to effectuate prompt, fair and equitable settlement of the claims submitted by Plaintiff where liability was reasonably clear when it categorically rejected Mr. Fredrics' estimate and refused in good faith to negotiate or identify any specific items that State Farm disputed and by refusing to negotiate or adjust the claim beyond their own inadequate determination, and 6) by failing to provide prompt reasonable and accurate explanation for the basis of its denial of Mr. Fredrics' estimate when Plaintiffs requested State Farm to do so in writing via their August 14, 2012 demand letter—State Farm kept claiming upgrades when Mr. Fredrics had not included upgrades and they generally denied cleaning of the whole house without specifying any specific cleaning that State Farm disputed; and 7) demanded a re-inspection not for the purposes of State Farm inspecting the loss in good faith, but instead to allow a third party to inspect for the sole purpose of disputing my estimate before ever attempting in good faith to inspect with me alone and to discuss my estimate.

35.

The estimate that I submitted on behalf of Plaintiffs with respect to the kitchen alone was $24,762.51 without overhead profit and tax.

36.

My kitchen estimate did not contain any costs for upgrades.   My estimate

included estimate for the cost of replacing the cabinets with similar construction because the policy covers "repair or replacement with similar construction…the damaged part of the property covered" and in my expert opinion, the cabinets could not be "repaired" with "similar construction". (Doc. 1-1, Exhibit A to the Verified Complaint "The Policy"). In other words, in my opinion, any repairs would not match the existing cabinets.

37.

My kitchen estimate included repair and replacement of "tile countertop", not granite.

38.

My estimate included replacement of the dishwasher, cook top stove, double oven, and range hood because Plaintiffs advised that they stopped working after the fire.

39.

It is not uncommon for appliances to work for a little while immediately after a fire only to quit working days or weeks later due to latent defects caused by the fire.

40.

My estimate included costs to replace the refrigerator because it was damaged from smoke and fire on the side where the fire was and could not be cleaned as relayed to me by Ms. Javits. In addition, because the refrigerator was exposed to high heat which often damages electrical components of appliances, it has a high likelihood of

having a latent defect caused by the fire.  Again, the policy covers this as a
replacement even if the refrigerator was working because the refrigerator could not be
repaired.

41.

I included the costs to repair the smoke sensors because in my experience, the
sensors are damaged by a smoke film and this is a potential safety hazard that may
cause the sensors not to operate properly in the event of a future fire.

42.

In my opinion, State Farm could have estimated the cost of replacing the
cabinets independent of any estimates submitted by Plaintiffs.  State Farm's claim that
Plaintiff submitted other estimates that contained upgrades is merely an excuse that
they are hiding behind for failing to include the cabinets in their estimate.  Moreover,
State Farm could easily account for any alleged upgrades contained within estimates
submitted by Plaintiffs prior to my estimate by making deductions for the industry
average costs for such upgrades.

43.

Any competently trained adjuster should be able to handle elementary
calculations to account for upgrades included in an estimate for repairs.  It is not
necessary for an insured to obtain multiple estimates from contractors for State Farm
to accomplish this task.

44.

It is also not necessary to complete multiple inspections to make adjustments to an estimate.

## 45.

At no time did State Farm ever communicate to me directly a single line item in my estimate that it disagreed with or that it believed to be erroneous.  They categorically rejected my estimate and demanded another inspection for the purpose of letting a third party inspect (not State Farm)  after State Farm had already had two inspections.

## 46.

At the time of State Farm's demand for a third inspection (by a third party), the Plaintiffs had already demolished the kitchen, so even if they had complied with the request for a third inspection, State Farm has not been prejudiced because their pre-demolition estimates would be more accurate than a post demolition estimate.

## 47.

State Farm expected the Javits to continue to live in a state of chaos indefinitely while they took their time in adjusting the claim on the one hand, but on the other hand expressed their intentions of holding the Javits in strict compliance with provisions required to recover for additional living expenses in Coverage C – Loss of Use limiting the Javits' recovery to the "time required to repair or replace the premises".   (See Andrew Morris Letter June 20, 2012 attached hereto).  In said letter, Mr. Morris expressed his intent not to cover additional living expenses beyond two weeks, which

he opined is when the Javits should have completed all repairs.  This necessitated the Javits to begin repairs as best they could despite not having adequate compensation.

48.

None of State Farms' alleged demands for a third inspection were actually requests for State Farm to inspect the loss so State Farm could evaluate the damages, but instead were a demand to allow a "third party" to inspect the loss and estimate damages—which sounded to me like a one sided demand for appraisal, especially in light of my phone conversation with Mr. Morris that he intended to prove my estimate totally wrong.

49.

Based upon my years of working as an adjuster for insurance companies, I know that insurance companies typically reach agreements with their "preferred contractors" to use the insurance company's scope parameters and pricing and preferred contractors are generally preferred because they cater to the interests of the insurance company, not to the insured.  Often insurance companies use these same preferred contractors for their so called "independent" inspections and their estimates more often than not are in the best interests of the insurance company.

50.

The generally accepted claims practices in the insurance industry require the insurer to accept the insureds' claims and puts the burden on the insurance company to disprove the claim.

FURTHER AFFIANT SAYETH NOT.

_____
Bruce Fredrics

State of Arizona County of Maricopa

Sworn to and Subscribed before me
this
31st day of January        ,
2014.

_____
NOTARY PUBLIC

MATT FRENZA
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
March 31, 2017

My Commission Expires:

March 31, 2017
_____


Counsel  Certifies that this Pleading  complies with Local Rule 5.1.
This type is Times New Roman, 14 point.

**Bruce Fredrics USA**

| | |
|---|---|
| **From:** | Donna Overholt Willis <donna.o.willis.c395@statefarm.com> |
| **Sent:** | Tuesday, July 31, 2012 10:54 AM |
| **To:** | Bruce Fredrics USA |
| **Cc:** | John Bond; Annette Saunders |
| **Subject:** | RE: 11-0W46-551 Javits (Morris) |

Thank you. I look forward to hearing from the insureds' attorney regarding State Farm's demand that it be permitted to inspect the property with an expert in order to reconsider the scope of the damage.

Donna Willis

Donna Overholt Willis, Esq.
Sharon W. Ware & Assoc.
2400 Century Parkway
Suite 200
Atlanta. GA 30345
404-728-5459

NOTICE: PRIVILEGED AND CONFIDENTIAL  The information contained in this message and any attachments contains privileged and confidential material intended for the sole use of the individual(s) named above.  The sender wishes to preserve the attorney-client, work-product, and any other privilege, as applicable.  If you are not an intended business recipient listed above, or an employee or agent of such recipient who is responsible for delivering this material to them, you are hereby notified that any disclosure, duplication, distribution, or other use of this information or the taking of any action in reliance on the contents of this transmission, without the express written consent of the sender, is STRICTLY PROHIBITED.  If you have received this transmission in error, please notify the sender immediately by telephone, so the return of this material can be arranged at no cost to you.  Receipt by anyone other than the intended recipients is not a waiver of any attorney-client, work-product, or other applicable privilege.

---

**From:** Bruce Fredrics USA [mailto:bruce@usadjusters.com]
**Sent:** Tuesday, July 31, 2012 12:39 AM
**To:** Donna Overholt Willis
**Subject:** RE: 11-0W46-551 Javits (Morris)

Status:

I received your letter of July 24th.  Please be advised that the insureds have retained Legal Counsel, so we are not responding to your letter at this time pending Attorney review of this claim.

1

EXHIBIT A FREDRICS AFF. 1

**Bruce Fredrics USA**

| | |
|---|---|
| **From:** | Donna Overholt Willis <donna.o.willis.c395@statefarm.com> |
| **Sent:** | Tuesday, July 31, 2012 10:54 AM |
| **To:** | Bruce Fredrics USA |
| **Cc:** | John Bond; Annette Saunders |
| **Subject:** | RE: 11-0W46-551 Javits (Morris) |

Thank you. I look forward to hearing from the insureds' attorney regarding State Farm's demand that it be permitted to inspect the property with an expert in order to reconsider the scope of the damage.

Donna Willis

Donna Overholt Willis, Esq.
Sharon W. Ware & Assoc.
2400 Century Parkway
Suite 200
Atlanta. GA 30345
404-728-5459

NOTICE: PRIVILEGED AND CONFIDENTIAL  The information contained in this message and any attachments contains privileged and confidential material intended for the sole use of the individual(s) named above.  The sender wishes to preserve the attorney-client, work-product, and any other privilege, as applicable.  If you are not an intended business recipient listed above, or an employee or agent of such recipient who is responsible for delivering this material to them, you are hereby notified that any disclosure, duplication, distribution, or other use of this information or the taking of any action in reliance on the contents of this transmission, without the express written consent of the sender, is STRICTLY PROHIBITED.  If you have received this transmission in error, please notify the sender immediately by telephone, so the return of this material can be arranged at no cost to you.  Receipt by anyone other than the intended recipients is not a waiver of any attorney-client, work-product, or other applicable privilege.

---

**From:** Bruce Fredrics USA [mailto:bruce@usadjusters.com]
**Sent:** Tuesday, July 31, 2012 12:39 AM
**To:** Donna Overholt Willis
**Subject:** RE: 11-0W46-551 Javits (Morris)

Status:

I received your letter of July 24th.  Please be advised that the insureds have retained Legal Counsel, so we are not responding to your letter at this time pending Attorney review of this claim.

EXHIBIT A FREDRICS AFF. 2

**Bruce Fredrics USA**

| | |
|---|---|
| **From:** | Bruce Fredrics USA <bruce@usadjusters.com> |
| **Sent:** | Thursday, July 26, 2012 11:43 AM |
| **To:** | 'Donna Overholt Willis' |
| **Cc:** | 'Andrew Morris'; 'Annette Saunders' |
| **Subject:** | RE: 11-0W46-551 Javits (Morris) |

Status:

The insureds have advised our office the they have consulted with Legal Counsel, and they expect to execute the law firm's Retainer Agreement shortly.

The insured's have also advised that their DOI investigator has informed them of the DOI Office communications with State Farm on this matter, and that State Farm has outlined to the DOI an action plan of which the insured's are unclear, and then of course so are we.



*Working Exclusively For The Policyholder*

*Bruce Fredrics, CGA, AIC, CCA, PCLA, LPCS, HCRI, CCL*
*Public Insurance Adjuster*
*Cell:  912-429-3328;  Alt: 770-573-9406*
*2483 Heritage Village, Ste 16-327*
*Snellville, GA 30078*

*United States Adjusters, Inc*
*Corporate Headquarters*
*9600 Sample Road, Suite 300*
*Coral Springs, FL 33065*

*bruce@usadjusters.com*
*www.unitedstatesadjusters.com*

*tel:  1-800-872-0201*
*fax:    561-300-3062*

CONFIDENTIALITY NOTICE:  The information contained in this communication, including attachments is privileged and confidential.  It is intended only for the exclusive use of the addressee.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error please notify us by telephone immediately at 1-800-872-0201 or reply to this sender.  Thank you.
Follow us: www.unitedstatesadjusters.com| LinkedIn | Twitter | Facebook

**From:** Bruce Fredrics USA [mailto:bruce@usadjusters.com]
**Sent:** Monday, July 23, 2012 1:36 PM
**To:** 'Donna Overholt Willis'
**Cc:** 'Andrew Morris'; 'Annette Saunders'
**Subject:** FW: 11-0W46-551 Javits (Morris)

1

EXHIBIT A FREDRICS AFF. 3

**Bruce Fredrics USA**

| | |
|---|---|
| **From:** | Bruce Fredrics USA <bruce@usadjusters.com> |
| **Sent:** | Tuesday, July 24, 2012 7:32 AM |
| **To:** | 'Donna Overholt Willis' |
| **Cc:** | 'Andrew Morris'; 'Annette Saunders' |
| **Subject:** | RE: 11-0W46-551 Javits (Morris) |

I made a correction below where I typed "doint", when it should be "doing".

The insureds are consulting with Attorney(s) this week. You will receive either a Letter of Representation from the insured's Attorney, or we will follow up with a Certified Letter of fact. We expect that either will be completed next week.



*Working Exclusively For The Policyholder*

*Bruce Fredrics, CGA, AIC, CCA, PCLA, LPCS, HCRI, CCL*
*Public Insurance Adjuster*
*Cell: 912-429-3328; Alt: 770-573-9406*
*2483 Heritage Village, Ste 16-327*
*Snellville, GA 30078*

*bruce@usadjusters.com*
*www.unitedstatesadjusters.com*

*United States Adjusters, Inc*
*Corporate Headquarters*
*9600 Sample Road, Suite 300*
*Coral Springs, FL 33065*

*tel: 1-800-872-0201*
*fax:   561-300-3062*

CONFIDENTIALITY NOTICE: The information contained in this communication, including attachments is privileged and confidential. It is intended only for the exclusive use of the addressee. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error please notify us by telephone immediately at 1-800-872-0201 or reply to this sender. Thank you.

Follow us: www.unitedstatesadjusters.com | LinkedIn | Twitter | Facebook

---

**From:** Bruce Fredrics USA [mailto:bruce@usadjusters.com]
**Sent:** Monday, July 23, 2012 1:36 PM
**To:** 'Donna Overholt Willis'
**Cc:** 'Andrew Morris'; 'Annette Saunders'
**Subject:** FW: 11-0W46-551 Javits (Morris)

For the record, on behalf of the policyholder(s), as stated below, State Farm's position is absolutely incorrect and unjustified. As the insured's representative, we so advise you.

EXHIBIT A FREDRICS AFF. 4

# SHARON W. WARE & ASSOCIATES

## ATTORNEYS AT LAW

**Employees of the Corporate Law Department**
**State Farm Mutual Automobile Insurance Company**

2400 Century Parkway, Suite 200, Atlanta, GA 30345

Mailing Address: P.O. Box 29200
Atlanta, GA 30359
Telephone: (404) 728-5400
Facsimile: (404) 728-5555

Sharon W. Ware
Gregory M. Dinsmore
Donna Overholt Willis
Lynn Heath Betz
J. Natalie Wilkes
Kay D. Thompson
W. Mark Amos
Natalie M. Smith
Jay F. Eidex
Louis L. McLendon, II
Sharon B. Gallahar

W. Dale Ellis, Jr.
Alycia D. F. Anderson
Sheetal M. Brahmbhatt
Stephanie V. Chavies
James L. Cannella, Jr.
Christine A. Forsythe
Laura Sidwell Maki
Julie E. Monaghan
Kristie L. Johnson
Hemanth Digumarthi

July 24, 2012

Bruce Fredrics, Public Insurance Adjuster
United States Adjusters
2483 Heritage Village
Suite 16-337
Snellville, GA 30078

RE:  Claim No: 11-0W46-551
    Insurer: State Farm Fire and Casualty Company
    Insured: Shoshana Javits
    Date of Loss: April 11, 2012

Dear Mr. Fredrics:

This is to follow up on my July 23, 2012 letter and on Claim Representative Andrew Morris' June 20, 2012 letter. As you know, State Farm Fire and Casualty Company ("State Farm") retained this firm to represent it in conjunction with your client's demand for Appraisal. State Farm considers the demand improper. Appraisal may be invoked only if your client and State Farm disagree on the cost to repair the covered damage.

Additionally, State Farm hereby demands that you and your client meet with Mr. Morris and a representative from a fire mitigation and restoration company to conduct an inspection of the damage. Mr. Morris will review the damage and determine whether he needs to reconsider the scope of the damage.

**APPLICABLE POLICY LANGUAGE:**

**SECTION I – CONDITIONS**
...
2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:
...
d. as often as we reasonably require:

EXHIBIT A FREDRICS AFF. 5

(1) exhibit the damaged property;

Please contact Mr. Morris directly to arrange for the joint inspection of the damage. He can be reached at 770-296-0188.

Naturally, nothing in this letter is intended as a waiver of State Farm's right to insist upon strict compliance with all contractual terms, conditions, and limitations or as a waiver of any right or defense under the contract or applicable Georgia law.

With kind regards,

Donna Overholt Willis

DOW/as

# SHARON W. WARE & ASSOCIATES

## ATTORNEYS AT LAW

Sharon W. Ware
Gregory M. Dinsmore
Donna Overholt Willis
Lynn Heath Betz
J. Natalie Wilkes
Kay D. Thompson
W. Mark Amos
Natalie M. Smith
Jay F. Eidex
Louis L. McLendon, II
Sharon B. Gallahar

**Employees of the Corporate Law Department
State Farm Mutual Automobile Insurance Company**

2400 Century Parkway, Suite 200, Atlanta, GA  30345

Mailing Address: P.O. Box 29200
Atlanta, GA  30359
Telephone:  (404) 728-5400
Facsimile:  (404) 728-5555

W. Dale Ellis, Jr.
Alycia D. F. Anderson
Sheetal M. Brahmbhatt
Stephanie V. Chavies
James L. Cannella, Jr.
Christine A. Forsythe
Laura Sidwell Maki
Julie E. Monaghan
Kristie L. Johnson
Hemanth Digumarthi

July 23, 2012

Bruce Fredrics, Public Insurance Adjuster
United States Adjusters
2483 Heritage Village
Suite 16-337
Snellville, GA 30078

RE:   Claim No:  11-0W46-551
    Insurer: State Farm Fire and Casualty Company
    Insured: Shoshana Javits
    Date of Loss:  April 11, 2012

Dear Mr. Fredrics:

  State Farm Fire and Casualty Company ("State Farm") retained this firm to represent it in conjunction with your improper demand for Appraisal. State Farm's policy does not permit the use of Appraisal to resolve an issue of coverage. Appraisal may be invoked only if your client and State Farm disagree on the cost to repair the covered damage. Appraisal may not be invoked to resolve a dispute about what damage resulted from a covered loss. Appraisal is not a means of resolving the issue of liability under an insurance policy. It only determines the amount of an acknowledged liability that has not been agreed upon by Ms. Javits and State Farm.

  In response to your June 28, 2012 letter, please let me know if the named insured, Shoshana Javits, will limit her demand for Appraisal to allow Ms. Javits and State Farm to resolve a disagreement as to the "pricing" methodology used by State Farm to calculate the amount owed to repair the covered damage. In the meantime, if you have any legal authority for your position that your client may invoke Appraisal to resolve an issue other than the cost to repair the covered damage, I am happy to consider it.

  Naturally, nothing in this letter is intended as a waiver of State Farm's right to insist upon strict compliance with all contractual terms, conditions, and limitations or as a waiver of any right or defense under the contract or applicable Georgia law.

EXHIBIT A FREDRICS AFF. 7

With kind regards,

Donna Overholt Willis

DOW/as

State Farm®
Providing Insurance and Financial Services
Home Office, Bloomington, Illinois 61710



June 20, 2012

Duluth Operations Center
Fire Field Claims
PO Box 10003
Duluth, GA 30096-9403

BRUCE FREDICS
UNITED STATES ADJUSTERS INC
4800 N FEDERAL HWY STE 104D
BOCA RATON FL 33431

RE:   Our Insured:         Shoshana Javits and Haim Javits
      Our Claim Number:    11-0W46-551
      Our Policy Number:   11PC27810
      Loss Location:       4500 Kings Lake Drive Northeast
                           Marietta, GA 30067

Dear Mr. Fredics:

This letter is in response to the request for appraisal received on June 13, 2012, and your e-mail dated June 18, 2012.

I appreciate your willingness to move this claim forward. Unfortunately, at this time, the disagreement has to do primarily with scope of repairs. Per our conversation on May 31, 2012, I am willing to meet with you and a fire mitigation and restoration company at the loss location to review and determine if there is anything additional I need to consider in my scope. There is an independent contractor that has looked at the loss and is able to complete the work based off my estimate. If there is a particular item (s) you would like to discuss as it relates to the amount, please let me know.

At this time, we are unable to consider the request for appraisal as it doesn't apply to scope of repairs.  Please see Homeowners Policy, FP-7955, for the following policy language:

## SECTION I - CONDITIONS

4.   Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon

BRUCE FREDICS
11-0W46-551
Page 2

an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

Your e-mail also mentions Additional Living Expense as the kitchen is not useful. Please see the policy for the following policy language:

**COVERAGE C - LOSS OF USE**

1.   **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

As indicated, Additional Living Expense would apply for time required to make repairs. Based on our current scope, repairs would take two weeks and payment was issued on May 4, 2012. Therefore, Additional Living Expense will apply from the date of loss of April 11, 2012, to May 18, 2012. This is reasonable amount of time based on your policy conditions. To calculate this, please provide the insured's usual food expenditure and receipts for the additional costs incurred.

Thank you for your cooperation. If you have any questions, please contact me at the number listed below. I look forward to working with you.

Sincerely,


Andrew Morris
Claim Representative
770 418 3029
State Farm Fire and Casualty Company

28/732/807918

## Bruce Fredrics USA

| | |
|---|---|
| **From:** | GASC CLMS-FIRE-DOC-TEAMY <gasc.clms-fire-doc-teamy.108o27@statefarm.com> |
| **Sent:** | Tuesday, June 19, 2012 4:33 PM |
| **To:** | Bruce Fredrics USA |
| **Subject:** | RE: 11-0W46-551 Javits (Morris) |

Bruce,

I have received the request. I will review and send our response.

Thank you,

------------------------------------
**Andrew Morris**
Claim Representative
Duluth Operation Center
Fire Field Claims
770-296-0188
800-576-0541 (Fax)
P. O. Box 106146
Atlanta, GA 30348-6146

---

**From:** Bruce Fredrics USA [mailto:bruce@usadjusters.com]
**Sent:** Monday, June 18, 2012 9:02 PM
**To:** GASC CLMS-FIRE-DOC-TEAMY
**Cc:** 'Shoshana Javits'; 'Theodore J Taylor'
**Subject:** RE: 11-0W46-551 Javits (Morris)
**Importance:** High

Per our last phone discussion, please see attached demand for Appraisal under their policy entitlement.  You should have received these documents previously, but we haven't heard from your office, so we didn't know the status.

The insureds are extremely anxious to conclude this claim and proceed with cleaning and repairs to get back to a normal life.  They haven't been able to use their kitchen since the fire, and the insureds are accumulating out-of-pocket dining costs.

We need you to name your Appraiser so that they can select an Umpire and begin the Award evaluation asap.

Please advise.

Thanks,

1

EXHIBIT A FREDRICS AFF. 11



**Working Exclusively For The Policyholder**

| | |
|---|---|
| *Bruce Fredrics, CGA, AIC, CCA, PCLA, LPCS, HCRI, CCL* | *United States Adjusters, Inc* |
| *Public Insurance Adjuster* | *Corporate Headquarters* |
| *Cell: 912-429-3328; Alt: 770-573-9406* | *9600 Sample Road, Suite 300* |
| *2483 Heritage Village, Ste 16-327* | *Coral Springs, FL 33065* |
| *Snellville, GA 30078* | |
| *bruce@usadjusters.com* | *tel: 1-800-872-0201* |
| *www.unitedstatesadjusters.com* | *fax: 561-300-3062* |

CONFIDENTIALITY NOTICE: The information contained in this communication, including attachments is privileged and confidential. It is intended only for the exclusive use of the addressee. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error please notify us by telephone immediately at 1-800-872-0201 or reply to this sender. Thank you.

Follow us: www.unitedstatesadjusters.com| LinkedIn | Twitter | Facebook

---

**From:** Bruce Fredrics [mailto:bfredrics@live.com]
**Sent:** Monday, May 14, 2012 6:57 PM
**To:** 'GASC CLMS-FIRE-DOC-TEAMY'
**Subject:** RE: 11-0W46-551 Javits (Morris)

Thanks for your info. I was blacked-out of Internet access until now.

We will pursue a full copy of the insured's policy from the Agent.

Bruce Fredrics, AIC, CCA, PCLA, LPCS, HCRI
General Adjuster Multi-line, LCC
Certified: Umpire, Bus. Interruption, Wind, Flood, Roofing, Notary
Public Adjuster
United States Adjusters
2483 Heritage Village, Ste 16-327
Snellville, GA 30078
Cell: 912-429-3328
Alt: 770-573-9406
Fax: 561-300-3062
bruce@usadjusters.com
www.unitedstatesadjusters.com

---

**From:** GASC CLMS-FIRE-DOC-TEAMY [mailto:gasc.clms-fire-doc-teamy.108o27@statefarm.com]
**Sent:** Friday, May 11, 2012 2:56 PM

EXHIBIT A FREDRICS AFF. 12

**To:** BRUCE@USADJUSTERS.COM
**Subject:** 11-0W46-551 Javits (Morris)

Bruce,

Please find my contact information listed below. You can also forward information to me via this e-mail address.  Mr. Javits' State Farm claim number is referenced in the subject line. I look forward to working with you.

Thank you,
-------------------------------------
**Andrew Morris**
Claim Representative
Duluth Operation Center
Fire Field Claims
770-418-3029
800-576-0541 (Fax)
P. O. Box 106146
Atlanta, GA 30348-6146

*This e-mail channel is not encrypted.  Please do not send any unencrypted e-mail to State Farm containing Personally Identifiable or Non-Public Personal Information such as social security numbers, credit card numbers, medical information etc. If you must send this type of information to State Farm via e-mail, please contact your claim representative and request a secure e-mail channel.*

EXHIBIT A FREDRICS AFF. 13

Kaleb Blake Company ● 281 NW 78th Ave ● Plantation ● FL 33324 ● (954) 499-5852

Appraiser Appointment Form

Insured: Haim & Shoshana Javits

Policy #: 11-PC-2781-0

Claim #: 110W46551

Date Of Loss: 04/11/2012

Peril: Fire

Carrier: State Farm Insurance Company

Property Location: 4500 King Lakes Drive NE, Marietta, GA 30069

Per policy provisions, we are requesting that the Appraisal clause in the policy be invoked.

We have assigned Kaleb Blake Company LLC to act as our Appraiser in the Appraisal process and to evaluate the loss. The assigned Appraiser will be Ted Taylor. He can be contacted via telephone at (954) 499-5852, via e-mail at ted.taylor@kalebblake.net, or via facsimile at (866) 439-7423.

Our Appraiser will be providing a detailed assessment of the loss incurred during the Appraisal process. The main items that are in question are represented in the estimate provided by my public adjuster.

The appraisal process has been explained to me by my representative, and I understand the responsibility that I have to pay 50% of the costs of an umpire, if required. I also understand that it is the sole decision of the appraisers involved to determine whether or not the services of an umpire will be required, and once an agreement has been reached this will represent full and final settlement of the referenced insurance claim.

Haim Javits
Insured's Signature: _____    Date: 6/5/12

Shoshana Javits
Insured's Signature: _____    Date: 6/5/12

EXHIBIT
P. B

EXHIBIT A   FREDRICS AFF. 14

**Bruce Fredrics USA**

| | |
|---|---|
| **From:** | Me <bruce@usadjusters.com> |
| **Sent:** | Thursday, May 31, 2012 1:16 PM |
| **To:** | ted@usadjusters.com; bruce@usadjusters.com |
| **Subject:** | Javits protein fire |

State Farm has NO intent to negotiate saying my estimate is overkill!  The insureds need to demand Appraisal.  It's $10k vs $85k.

Please advise.

*Connected by DROID on Verizon Wireless*

EXHIBIT A FREDRICS AFF. 15

**Bruce Fredrics USA**

| | |
|---|---|
| **From:** | Bruce Fredrics USA <bruce@usadjusters.com> |
| **Sent:** | Thursday, May 24, 2012 5:19 PM |
| **To:** | 'GASC CLMS-FIRE-DOC-TEAMY' |
| **Subject:** | RE: 11-0W46-551 Javits (Morris) |
| **Attachments:** | Estimate contents abbr.pdf; Estimate structure abbr.pdf |

Getting back to you, please find attached our estimates for the Structure and Contents claims under Coverage Parts A and C. The insured has no kitchen of course, and his family has been incurring Additional Living Expenses with dining out costs. When the house undergoes restoration from the fire damages, heat, soot, and smoke contamination exposures, the insured will need to make temporary living arrangements until repairs are completed.

In summary, the insured advised us that this loss was from a kitchen fire (Protein Fire), which we observed, while smoke filled the house of which just about everything was exposed to the contamination effect. The insured is anxious to proceed to conclusion of the claim.

Regarding our estimates, we reserve the right to revise any goofs. If you find any, please inform me.

Please advise.

Thanks,



*Working Exclusively For The Policyholder*

*Bruce Fredrics, CGA, AIC, CCA, PCLA, LPCS, HCRI, CCL*
*Public Insurance Adjuster*
*Cell: 912-429-3328; Alt: 770-573-9406*
*2483 Heritage Village, Ste 16-327*
*Snellville, GA 30078*

*United States Adjusters, Inc*
*Corporate Headquarters*
*9600 Sample Road, Suite 300*
*Coral Springs, FL 33065*

*bruce@usadjusters.com*
*www.unitedstatesadjusters.com*

*tel: 1-800-872-0201*
*fax: 561-300-3062*

CONFIDENTIALITY NOTICE: The information contained in this communication, including attachments is privileged and confidential. It is intended only for the exclusive use of the addressee. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error please notify us by telephone immediately at 1-800-872-0201 or reply to this sender. Thank you.
Follow us: www.unitedstatesadjusters.com| LinkedIn | Twitter | Facebook

EXHIBIT A FREDRICS AFF. 16

**From:** Bruce Fredrics [mailto:bfredrics@live.com]
**Sent:** Monday, May 14, 2012 6:57 PM
**To:** 'GASC CLMS-FIRE-DOC-TEAMY'
**Subject:** RE: 11-0W46-551 Javits (Morris)

Thanks for your info.  I was blacked-out of Internet access until now.

We will pursue a full copy of the insured's policy from the Agent.

**Bruce Fredrics, AIC, CCA, PCLA, LPCS, HCRI**
**General Adjuster Multi-line, LCC**
**Certified: Umpire, Bus. Interruption, Wind, Flood, Roofing, Notary**
**Public Adjuster**
**United States Adjusters**
**2483 Heritage Village, Ste 16-327**
**Snellville, GA 30078**
**Cell: 912-429-3328**
**Alt:  770-573-9406**
**Fax: 561-300-3062**
**bruce@usadjusters.com**
**www.unitedstatesadjusters.com**

---

**From:** GASC CLMS-FIRE-DOC-TEAMY [mailto:gasc.clms-fire-doc-teamy.108o27@statefarm.com]
**Sent:** Friday, May 11, 2012 2:56 PM
**To:** BRUCE@USADJUSTERS.COM
**Subject:** 11-0W46-551 Javits (Morris)

Bruce,

Please find my contact information listed below. You can also forward information to me via this e-mail address.  Mr. Javits' State Farm claim number is referenced in the subject line. I look forward to working with you.

Thank you,

--------------------------------------
**Andrew Morris**
Claim Representative
Duluth Operation Center
Fire Field Claims
770-418-3029
800-576-0541 (Fax)
P. O. Box 106146
Atlanta, GA 30348-6146

*This e-mail channel is not encrypted.  Please do not send any unencrypted e-mail to State Farm containing Personally Identifiable or Non-Public Personal Information such as social security numbers, credit card numbers, medical information etc. If you must send this type of information to State Farm via e-mail, please contact your claim representative and request a secure e-mail channel.*

2

EXHIBIT A FREDRICS AFF. 17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHOSHANA JAVITS AND HAIM        )
JAVITS,                         )
                                )
          PLAINTIFFS,           )
                                )
V.                              )
                                )          Case No:  :13-CV-00487-WSD
STATE FARM FIRE AND CASUALTY    )
COMPANY,                        )
                                )
          DEFENDANT.            )

## CERTIFICATE OF SERVICE

I HEREBY CERITIFY that I have this day electronically filed the foregoing

**AFFIDAVIT OF BRUCE FREDRICS** with the clerk of Court using the CM/ECF

system which will automatically send email notification of such filing to the

following counsel of record:

John Campbell, Esq.
Myrece R. Johnson, Esq.
1355 Peachtree Street, N.E., Suite 300
Atlanta, GA 30309

This 4th day of February, 2014.

/s/ Sandra Finch_____
SANDRA FINCH
Attorney for Plaintiff
State Bar No.:  446264

The Russell's Law Firm, PLC
4333 Dunwoody Park, Unit 2213
Atlanta, GA 30338
T: 706-461-1760
F: 855-778-5559