# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **SHOSHANA JAVITS and HAIM JAVITS,** | |
| **Plaintiffs,** | |
| **v.** | **1:13-cv-487-WSD** |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant State Farm Fire and Casualty Company's ("Defendant" or "State Farm") Motion for Partial Summary Judgment [25] and Motion to Strike [34].  Also before the Court are Plaintiffs Shoshana Javits ("Mrs. Javits") and Haim Javits ("Mr. Javits") (together, "Plaintiffs") Motion for Oral Argument [32], Motion to Appoint Expert [39], and Motion to Remand [45].

## I.   BACKGROUND

This is an insurance coverage dispute in which Plaintiffs seek coverage, under a homeowners' insurance policy issued by State Farm, for damage caused to their home by a fire in their kitchen.  It is undisputed that damage caused by the fire is covered under the policy.  The parties, however, dispute the extent of the

damage and how to remedy it.  State Farm asserts that it is entitled to partial summary judgment because their refusal to pay the entire amount of Plaintiffs' claimed lost was not in bad faith, and because most of the claims in their Complaint are precluded, as a matter of law, in an action based on an alleged breach of contract.

A.   Facts

State Farm issued to Plaintiffs a homeowners' insurance policy, number 11-PC-2781-0 (the "Policy"), covering damage, including as a result of fire, for Plaintiffs' home in Marietta, Georgia.  The Policy states that Defendant "will pay the cost to repair or replace with similar construction . . . the damaged part of the property. . . ."  (Policy [1.1 at 23-49] at 11).

On April 11, 2012, Mrs. Javits put two pots of oil on the stove in her kitchen, turned on the heat, and left the kitchen.  (DSMF [25.4] ¶ 2).  When she returned, the oil had ignited.  (Id. ¶ 3).  Mrs. Javits opened the kitchen window, sprayed the fire with water from a garden hose, re-entered the house and threw the pots outside.  (Id. ¶¶ 4-5).  Mrs. Javits reported the fire to her State Farm insurance agent that night.  (S. Javits Aff. [31.4] ¶ 7).

On April 19, 2012, Andrew Morris ("Morris"), a State Farm claim representative, inspected the damage to Plaintiffs' home.  (DSMF ¶ 7).  Mrs. Javits

showed Morris the damaged areas in her kitchen and living room, and told him that smoke had filled the home.  (S. Javits Aff. ¶ 8).

On April 20, 2012, Morris prepared an estimate of the cost to repair the damage to Plaintiffs' home.  (DSMF ¶ 9).  Morris's estimate included the cost to replace the cabinets damaged by the fire, the tile countertop, the range and stovetop, to clean the refrigerator, double oven and kitchen floor, and to paint all of the cabinets in the kitchen, including those that were not damaged by the fire, to ensure uniformity of color.  (First Morris Aff. [25.3] at Ex. A; Second Morris Aff. [35.1] ¶¶ 11-12).  Morris's estimate included cleaning or repairs in the breakfast area, office and hallway, but did not include repairs or cleaning to other areas of the home.  (First Morris Aff. at Ex. A).  Morris estimated the total cost to repair the damage caused by the April 11, 2012, fire would be $10,783.29.  (Id.).

Based on Morris's estimate, State Farm issued payment to Plaintiffs in the amount of $5,870.43.  (DSMF ¶ 10).  The remaining $3,912.86 was to be paid to Plaintiffs after the repairs were completed.  (Id.).[1]

On April 26, 2012, Plaintiffs sent to Defendant an estimate they had received from Imperial Design to replace all of their cabinets and install granite countertops.  (DSMF ¶ 11).  The estimate includes upgrades to the materials used

---

[1]      Plaintiff had a $1,000.00 deductible under the Policy.

in Plaintiffs' existing kitchen[2] and totaled $32,000.00.  (Id.).

In response to the estimate it received from Plaintiffs, State Farm retained Georgia Water and Fire Restoration, a third-party contractor, to conduct a second inspection of the damage to Plaintiffs' home.  (DSMF ¶ 12).  On May 1, 2012, Georgia Water and Fire Restoration inspected Plaintiffs' home and prepared an estimate, totaling $11,708.41, which indicated a scope of damage and repairs to be performed similar to the damage and repair scope in Morris's estimate.  (Id. ¶ 13; First Morris Aff. at Ex. C).

Plaintiffs replied by submitting to State Farm an estimate for kitchen repairs from another contractor.  This new estimate totaled approximately $17,000.00, about half of the estimate Plaintiffs submitted previously.  (DSMF ¶ 14).  This estimate also included replacement of all of the cabinets, and also included upgrades to the kitchen, including an island, crown molding, soft close cabinets and wine storage.  (Id.).  Because the estimates Plaintiffs submitted provided for upgrades and replacement of all the cabinetry, State Farm rejected both estimates that Plaintiffs submitted.

---

[2]     For example, the countertops damaged in the fire were tile.

At some point, Plaintiffs hired Bruce Fredrics ("Fredrics"), a "public adjuster,"[3] to inspect the damage to Plaintiffs' home.  Fredrics conducted his inspection on May 7, 2012, and he prepared an estimate in the amount of $70,347.20 for the repair and replacement of "structural damage" to Plaintiffs' home, and $12,720.84 for cleaning of the entire house and its contents.  (DSMF ¶¶ 15, 17).  Fredrics's estimate included, among others, replacing all the cabinets, countertop, appliances and flooring in the kitchen, but did not include any upgrades.  (PSMF [31.2] ¶ 14).  Fredrics included replacement of all the cabinetry because, he claims, "any repairs would not match the existing cabinets."  (Fredrics Aff. [31.3] ¶ 36).  On May 30, 2012, Plaintiffs submitted Fredrics's estimate to State Farm.  (DSMF ¶ 18).

On June 5, 2012, Plaintiffs executed an Appraisal Appointment Form, seeking to invoke the appraisal provision in the Policy, which states that if Plaintiffs and Defendant "fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal.  If either makes a written

---

[3]     Georgia law defines a "public adjuster" as "any person who solicits, advertises for, or otherwise agrees to represent only a person who is insured under a policy covering fire . . . and other physical damage to real and personal property . . . and who, for compensation on behalf of an insured . . . [a]cts or aids . . . in negotiating for . . .  a claim for loss or damage covered by an insurance contract . . . ."  See O.C.G.A. § 33-23-1.

demand for appraisal, each shall select a competent, disinterested appraiser. . . ." (Id. ¶ 19; Policy at 14).

On June 20, 2012, State Farm sent to Fredrics, who was acting as Plaintiffs' representative, a letter stating that the appraisal provision in the Policy did not apply because the scope of repairs had not yet been determined.  (DSMF ¶ 20). The letter also states:

> Unfortunately, at this time, the disagreement has to do primarily with scope of repairs.  Per our conversation on May 31, 2012, I am willing to meet with you and a fire mitigation and restoration company at the loss location to review and determine if there is anything additional I need to consider in my scope.

(Id. ¶ 21; June 20, 2012, Letter [1.1 at 51-52]).

Morris and Fredrics did not meet to discuss the scope of repairs.  On July 24, 2012, Defendant sent a letter to Fredrics demanding, pursuant to the terms of the Policy, to re-inspect the damage to Plaintiffs' home caused by the April 11, 2012, fire.[4]  (Fredrics Aff. ¶ 27; July 24, 2012, Letter [31.3 at 21-22]). The letter states that State Farm considers Plaintiffs' appraisal request improper because

> [a]ppraisal may be invoked only if [Plaintiffs] and State Farm disagree on the cost to repair the covered damage.

---

[4]     The Policy requires Plaintiffs to "exhibit the damaged property" "as often as [Defendant] reasonably requires."  (Policy at 13).

> Additionally, State Farm hereby demands that [Fredrics] and
> [Plaintiffs] meet with Mr. Morris and a representative from a fire
> mitigation and restoration company to conduct an inspection of the
> damage.  Mr. Morris will review the damage and determine whether
> he needs to reconsider the scope of the damage.

(July 24, 2012, Letter at 1).

Plaintiffs did not comply with State Farm's request for re-inspection, including because they had already demolished the kitchen.  (DSMF ¶ 22; S. Javits Aff. ¶ 20).

On August 13, 2012, Defendant sent a letter to Plaintiffs requesting that they comply with the terms of the Policy and allow Defendant to re-inspect the damage to their home.  (S. Javits Aff. at Ex. A [33.1] 17-18).  The letter states that "Morris will bring an expert in fire damage mitigation and restoration and jointly inspect [Plaintiffs'] property with [Plaintiffs] and Ms. Javits' repair contractor of choice. Mr. Morris will review the damage and determine whether he needs to reconsider the scope of the damage."  (Id.).

On August 14, 2012, Plaintiffs sent to Defendant a "Demand for Payment Pursuant to O.C.G.A. § 33-4-6" ("Demand Letter"), demanding that Defendant pay to Plaintiffs $83,068.04, the total amount of Fredrics's estimate, for the damage to Plaintiffs' home as a result of the April 11, 2012, fire.  (DSMF ¶ 23; Demand Letter [1.1 at 53-55]).  Plaintiffs' Demand Letter also states that Plaintiffs'

"position is that Mr. Morris already had the opportunity to inspect the damage and failed to reasonably include all damages in his calculations in breach of the [Policy] and in violation of Georgia insurance law." (Demand Letter at 2). Plaintiffs' Demand Letter provides further that Plaintiffs "consider the refusal to participate in Appraisal to be a material breach of the [Policy] and said refusal has been made in bad faith . . . ." (Id.).

On September 7, 2012, Defendant sent to Plaintiffs another letter requesting that Plaintiffs, and their contractor of choice, meet with Morris and an independent expert in fire damage mitigation and restoration to re-inspect the damage. (S. Javits Aff. at Ex. A [33.1] 9-11). The letter states that, on several occasions, Morris explained to Plaintiffs and Fredrics that the three (3) repair estimates they provided "cannot be reconciled with State Farm's estimate because [Plaintiffs'] estimates are not for the same scope and materials similar to those in the house," including because "the estimates are not for the same type and quality of materials damaged by the fire," they call for "replac[ing] more of the structure than sustained damage and Mr. Fredrics' estimate includes cleaning and painting portions of the interior structure and cleaning contents that did not appear to sustain smoke or water damage." (Id. at 10). The letter states further that

> Mr. Morris offered to meet [Plaintiffs] or Mr. Fredrics with a smoke damage restoration expert to inspect the premises together. That way

8

> they can discuss [Plaintiffs'] repair estimates and resolve any
> confusion about the type [of] materials in the house and the extent to
> which the structure needs to be cleaned and painted and the extent to
> which the contents need to be cleaned.  [Plaintiffs'] estimates are to
> replace all kitchen cabinets and countertops with custom cabinets and
> granite countertops.  This is more work than is needed to repair the
> damage and constitutes a considerable material upgrade.  State Farm
> determined the cabinets can be cleaned and repaired.  However, State
> Farm has offered to discuss the estimates and re-inspect the damages.
>
> It is State Farm's position that Ms. Javits prematurely demanded
> Appraisal.  Appraisal is not available to determine the scope of the
> loss.  State Farm requested Mrs. Javits comply with a condition of the
> [P]olicy precedent to recovery in an effort to come to an agreement on
> the scope of the kitchen fire damage.  If there is a disagreement as to
> the material used in the house once [Plaintiffs] and State Farm have
> agreed on the extent of the damage, State Farm will entertain a
> demand for Appraisal.

(Id.).  Defendant suggested a conference call with Morris to discuss the differences

in the estimates and again requested that Plaintiffs schedule an inspection of the

damage with Morris and an independent expert.  (Id. at 10-11).

On November 7, 2012, Defendant sent to Plaintiffs a letter "[f]or the third

time . . . conveying [Defendant's] request to re-inspect the damage," "reminding

[Plaintiffs of their] obligation to comply" with the terms of the Policy regarding

re-inspection, and restating State Farm's position concerning the estimates

Plaintiffs submitted and their demand for Appraisal.  (Id. at 6-8).

On December 27, 2012, Defendant sent to Plaintiffs another letter nearly

identical to the September 7, and November 7, 2012, letters, again requesting

9

re-inspection and restating Defendant's objection to the estimates submitted by Plaintiffs and its denial of Plaintiffs' demand for Appraisal.  (Id. at 3-5).

On January 22, 2013, Defendant sent to Plaintiffs a letter "to explain [its] request for an additional inspection."  (Id. at 1-2).  The letter states that Plaintiffs

> claim the fire damage is much larger in scope than Mrs. Javits initially claimed . . . [and they submitted] an estimate alleging there is fire damage throughout the house and that painting and heavy cleaning needs to be performed in every room.  However, [Morris] did not observe soot or smoke damage outside the areas open to the kitchen and he was not given the opportunity to inspect all of the rooms in which [Plaintiffs] now claim damage occurred.  Additionally, on April 16, 2012, Mrs. Javits told Claim Representative Daryl Jenkins that she did not need anyone to come to the house to clean out smoke.  She was able to remove it herself.
>
> . . . State Farm requested an additional inspection after receiving [Fredrics's] estimate [which] is about five times higher than Mrs. Javits' original estimate and it includes work in areas of the house Mrs. Javits stated were undamaged. . . .
>
> State Farm paid for damage to the areas of the house open to the kitchen . . . .  Mr. Morris inspected the dining room and observed no damage and Mrs. Javits did not complain of any damage in the room. Mrs. Javits did not ask Mr. Morris to inspect areas of the house not directly open to the kitchen.  The initial disagreement about the claim payment involved the need to replace all of the kitchen cabinets. There was no discussion of cleaning.  As a result when Mr. Morris received Mr. Fredrics' estimate . . . he requested an additional inspection with Mr. Fredrics and [Plaintiffs] to observe the damage Mr. Fredrics listed in his estimate.  In response Mr. Fredrics asked Mr. Morris to negotiate with him without allowing Mr. Morris to inspect areas of damage he had not accessed previously.

> In response to [Plaintiffs'] claim that the fire damage is larger in scope than State Farm observed, [Morris] is happy to retain an independent expert in fire damage mitigation, repair and restoration at State Farm's expense to inspect the damage and to prepare a report of the findings . . . . [Defendant is] happy to review the names and credentials of qualified independent experts [Plaintiffs] recommend. . . . For the expert's inspection, please save all material removed from the house as repairs were made.
>
> . . . State Farm has not been given the opportunity to determine whether there has been a compensable accidental direct physical loss in areas of the house beyond those contiguous to the kitchen.  Mr. Fredrics' estimate was State Farm's first notice [Plaintiffs] were complaining of accidental direct physical loss in rooms other than the breakfast room, hall, kitchen and office.

(Id.).  Defendant also stated that it "look[ed] forward to hearing from [Plaintiffs] to arrange for an additional inspection of the property with an independent qualified expert in fire damage repair.  Hopefully, [the parties] can resolve this dispute without litigation."  (Id. at 2).  The record does not show that Plaintiffs responded to State Farm's request.

### B.   Procedural History

On January 10, 2013, Plaintiffs filed their Complaint [1.1 at 2-21] in the State Court of Fulton County, Georgia,[5] asserting claims against State Farm for: breach of contract (Count I); breach of implied covenant of good faith and fair dealing (Count II); bad faith (Count III); promissory estoppel (Count IV);

---

[5]     No. 13EV016505E.

"negligent claims handling" (Count V); negligent hiring, retention, supervision and training (Count VI); unfair business practices (Count VII); unfair claims settlement practices (Count VIII); and punitive damages (Count IX).

On February 14, 2013, State Farm removed the Fulton County action to this Court based on diversity of citizenship jurisdiction.  (Notice of Removal [1]).

On January 14, 2014, State Farm moved for summary judgment on all of Plaintiffs' claims, except their claim for breach of contract [25].

On February 18, 2014, Defendant filed its Motion to Strike [34].  Defendant contends that certain portions of Fredrics's Affidavit constitute expert testimony and must be struck because Plaintiffs identified Fredrics only as a fact witness and failed to identify him as an expert.  Defendant moves to strike portions of Plaintiffs' affidavits because they conflict with testimony given during their depositions.

On March 4, 2014, Plaintiffs responded to Defendant's Motion to Strike and, in the alternative, moved for leave to supplement discovery to identify Fredrics as an expert witness [39].

On May 10, 2014, Plaintiffs filed their Motion to Remand [45].  Plaintiffs argue that Defendant failed to show that the amount-in-controversy requirement was satisfied at the time of removal.  Plaintiffs contend further that the amount in

controversy does not exceed $75,000.00 because, on February 17, 2014, Plaintiffs sent to Defendant an offer to settle this action for $54,071.17, which consisted of $36,750.22 for Plaintiffs' breach of contract claim reflecting their actual out of pocket cost incurred to repair the damage, $12,127.57 in attorney's fees, and $5,193.38 in fees for their public adjuster.  (Feb. 17, 2014, Letter [45.1]).

The Court first considers Plaintiffs' Motion to Remand.

## II.    DISCUSSION

### A.    Motion to Remand

#### 1.    Legal Standard

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."  The Court's jurisdiction in this case is premised on diversity of citizenship, which authorizes federal jurisdiction over suits between citizens of different states where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a).  Plaintiffs and Defendant are citizens of different states, but they dispute whether the jurisdictional amount in controversy has been satisfied.

A removing defendant must file with the district court a notice of removal "containing a short and plain statement of the grounds for removal."  28 U.S.C. § 1446.  "If a plaintiff makes an unspecified demand for damages in state court, a

removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement."  Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotation marks omitted).  When a plaintiff makes a timely motion to remand, "the district court has before it only the limited universe of evidence available when the motion to remand is filed – i.e., the notice of removal and accompanying documents."  Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007).  "If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings."  Id. at 1215.  "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars."  Id.

      2.    Analysis

Plaintiffs argue that the amount-in-controversy requirement is no longer satisfied, and the Court now lacks subject-matter jurisdiction, because on February 17, 2014, they sent to Defendant a "Written Offer to Settle Tort Claim," seeking $54,071.17.  ([45.1]).  The Court disagrees.  In an action removed from state court, the amount in controversy is measured on the date of removal.  The

Burt Co. v. Clarendon Nat. Ins. Co., 385 F. App'x 892, 894 (11th Cir. 2010).

Thus, "events occurring after removal, such as the post-removal amendment of a

complaint . . . which may reduce the damages recoverable below the amount in

controversy requirement, do not divest the district court of jurisdiction." Id. (citing

Poore v. Am.-Amicable Life Ins. Co. of Tex., 218 F.3d 1287, 1290-91 (11th Cir.

2000) overruled in part on other grounds, Alvarez v. Uniroyal Tire Co., 508 F.3d

639, 640-41 (11th Cir. 2007).  Plaintiffs' post-removal settlement offer is not a

basis for remand.  The Court thus considers the Complaint and Notice of Removal

in evaluating the amount-in-controversy requirement and whether it was satisfied.

Plaintiffs' Complaint does not request a specific amount of damages.

Rather, Plaintiffs seek to recover for, among others, Defendant's alleged breach of

contract and bad faith for failing to pay the full amount of Plaintiffs' Claim for

coverage under the Policy.  Plaintiffs' August 14, 2012, Demand Letter, which is

attached to their Complaint and is the basis for their bad faith claim, states: "This

letter constitutes formal demand for payment of Mrs. Javits' [sic] claims for special

damages in the amount of $12,720.84 for cleaning of contents of the home plus

$70,347.20 for the structural repairs to the home."  ([1.1 at 55]).  Plaintiffs'

Demand Letter thus supports that, at the time of removal, the amount in

controversy exceeded $75,000.[6]  See, e.g., Southern Ins. Co. of Va. v. Karrer,

2011 WL 1100030, at *3-4 (M.D. Ga. Mar. 22, 2011) (amount in controversy

determined by, among others, damages estimated in demand letter); Lowery,

483 F.3d at 1212 n.62 (noting that courts have considered settlement offers and

demand letters in determining the amount in controversy).  Because Plaintiffs and

Defendant are citizens of different states and, at the time of removal, the amount in

controversy exceeded $75,000, the Court has subject-matter jurisdiction over this

action.  Plaintiffs' Motion to Remand is required to be denied.

      B.    Motion for Partial Summary Judgment

          1.    Legal Standard

A court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is

genuinely disputed must support that assertion by . . . citing to particular parts of

---

[6]      To the extent Defendant, based on Morris's estimate, has admitted liability for Plaintiffs' loss in the amount of $10,783.29, the amount-in-controversy requirement is still satisfied because the difference between Morris's estimate and Plaintiffs' claimed amount of loss in their Demand Letter is $72,284.75, and, if successful on their bad faith claim, Plaintiffs would be entitled to recover, at a minimum, an additional $5,000 plus their reasonable attorney's fees.  See O.C.G.A. § 33-4-6 (penalty for insurer's bad faith refusal to pay amount of insured's loss is, "in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.").

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must

deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

> 2.     Analysis
>
>> a.     Breach of the Duty of Good Faith and Fair Dealing, Promissory Estoppel, and Violation of the Unfair Business Practices Act (Counts II, IV, and VII)

In their Response, Plaintiffs assert that they "do not wish to proceed on their claims for promissory estoppel, fraud [sic], breach of implied good faith and fair dealing and violation of the unfair business practices act."  (Pls' Resp. [31] at 23).[7] The Court thus finds that Plaintiffs have abandoned these claims.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); see also LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").  Defendant is entitled to summary judgment on Plaintiffs' claims for breach of the duty of good faith and fair dealing, promissory estoppel, and violation of the Unfair Business Practices Act.

---

[7]     Plaintiffs' Complaint does not include a claim for fraud.

b.      Statutory Bad Faith (Count III)

O.C.G.A. § 33-4-6 authorizes statutory damages and an award of attorney's

fees when, "in the event of a loss which is covered by a policy of insurance," the

insurer refuses in "bad faith" to pay the covered loss "within 60 days after a

demand has been made by the holder of the policy."  O.C.G.A. § 33-4-6.  "[T]his

additional liability is not automatically imposed on an insurance company ever

time it refuses to pay the underlying claim prior to trial," even if the insured

successfully litigates the dispute.  Winningham v. Centennial Ins. Co., 708 F.2d

658, 659 (11th Cir. 1983).  "'Bad faith'. . . means any frivolous and unfounded

refusal in law or in fact to comply with the demand of the policyholder to pay

according to the terms of the policy."  Southern Gen. Ins. Co. v. Kent, 370 S.E.2d

663 (Ga. Ct. App. 1988) (quoting Interstate Life & Accident Ins. Co. v.

Williamson, 138 S.E.2d 668, 324-25 (Ga. 1964)).

"Penalties for bad faith are not authorized where the insurance company has

any reasonable ground to contest the claim."  JLM Enters., Inc. v. Hous. Gen. Ins.

Co., 196 F. Supp. 2d 1299, 1314 (S.D. Ga. 2002); see also Progressive Am. Ins. Co.

v. Horde, 577 S.E.2d 835, 837 (Ga. Ct. App. 2003) ("As a matter of law, bad faith

penalties and attorney fees under [Section] 33-4-6 are not awardable if an insurer

has a reasonable and probable cause for refusing to pay a claim."); Comm. Union

Ins. Co., 322 S.E.2d at 921.  "Where there is a reasonable basis for so doing, an insurer is entitled to maintain and defend its position as to the amount of its liability without the imposition of penalty and attorney's fees, even if doing so results in considerable delay in bringing the matter to a conclusion."  Ga. Farm Bureau Mut. Ins. Co. v. Boney, 148 S.E.2d 457, 460 (Ga. Ct. App. 1966).  "[T]he insured bears the burden of proving that the refusal to pay the claim was in bad faith."  Jimenez v. Chicago Title Ins. Co., 712 S.E.2d 531, 535 (Ga. Ct. App. 2011).[8]

In Winningham v. Centennial Ins. Co., the insured's home was damaged by a fire and she filed a claim with her insurer seeking, among others, $110,625 for loss to the dwelling.  708 F.2d 658 (11th Cir. 1983).  The insurer acknowledged its

---

[8]  Plaintiffs argue that summary judgment is only appropriate where "genuine factual issues involve a bona fide dispute over coverage," that is, "where there was a genuine issue of coverage i.e. insurance company was withholding all payment and denying claims based on no liability under a policy." (Resp. at 4).  Georgia law is clear that "'[a]ny rule or principle which would deny to the company the right of full and free litigation' *on the question of its liability or of the amount thereof*, is wrong."  See Boney, 148 S.E.2d at 460 (quoting Travelers Ins. Co. v. Sheppard, 12 S.E. 18, 39 (Ga. 1890)) (emphasis added); see also Winningham v. Centennial Ins. Co., 708 F.2d 658 (11th Cir. 1983) (stating, "[s]ince the insurer never contested its liability, the question is whether it had a reasonable basis for defending the amount of the claim;" finding no evidence to support insurer acted in bad faith by refusing to pay full amount sought by insured); B.S.S.B., Inc. v. Owners Ins. Co., No. 7:08-cv-112 (HL), 2010 WL 320229 (M.D. Ga. Jan. 20, 2010) (As insurer pointed to evidence showing that the reason for delay in payment was a dispute over how much was owed under the policy and there was a lack of evidence as to its bad faith, insurer was entitled to summary judgment on insured's bad faith claim).

liability but refused to pay the full amount claimed, including because a contractor told the insurer that he could repair the home for $99,627. Id. at 659. The insurer believed that the insured did not intend to rebuild the house, and made an offer to the insured of approximately $83,000 for the dwelling damage, which represented depreciation because the insurance policy provided for depreciation in the event repairs were not undertaken. Id. The insured rejected the offer. Id. The insured filed a complaint for breach of contract and bad faith, and the insurer admitted liability in the amount of $83,923.96 for the dwelling. Id. at 659-660. At trial, the insurer's independent contractor testified in support of his $99,627 repair estimate and a claims representative testified regarding the depreciation value under the policy. Id. at 660. A second contractor testified for the insured that he estimated the repair cost to be $110,625, the amount the insured had requested throughout the claim process, and another contractor and a real estate broker testified that the value of the structure was between $100,000 and $115,000. Id. The jury awarded the insured general damages, a bad faith penalty and attorney's fees. On appeal, the Eleventh Circuit reversed, holding that "[a]s a matter of law no bad faith penalty could be imposed" because, although the insured presented evidence supporting her claim of $110,000, she presented no evidence suggesting that the insurer acted in bad faith in failing to pay the full amount. Id. The court found

that the insurer reasonably based its final offer on an assessment of the cost of repairs furnished by an independent contractor and on the depreciation provision in the policy, and "the testimony merely established that, based in large part on two disparate estimates of the cost to repair and perhaps different readings of the policy in regard to depreciation, a bona fide dispute existed as to the extent of [the insurer's] liability for the dwelling." Id.

State Farm does not contest liability and the question is whether State Farm has a reasonable basis for not paying the full amount sought in Plaintiffs' Demand Letter, where three (3) separate inspections produced different opinions on the extent of, and how to remedy, the damage to Plaintiffs' home caused by the April 11, 2012, fire.

The record is that State Farm offered to Plaintiffs $10,783.29, less their $1,000.00 deductible, based on Morris's April 19, 2012, inspection of Plaintiffs' home, his observations of the extent of the damage caused to Plaintiffs' property by the April 11, 2012, fire, and his estimate of the cost to repair the damage. Mrs. Javits testified that she showed Morris what she believed was smoke on the ceiling and walls of the rooms adjacent to the kitchen.  (S. Javits Aff. ¶ 8).  Morris testified that he inspected the area of the loss, that he did not detect color variance in the walls or ceiling which would suggest smoke or soot damage, and that he did

not detect any smoke or soot damage in those areas which were not immediately adjacent to the kitchen.  (Second Morris Aff. ¶¶ 7-10).  Morris testified that, based on his observations, he determined that there was no smoke damage to the other rooms.  (Id. ¶ 10).  Morris also testified that his estimate included the cost to replace cabinets damaged by the fire, clean the kitchen floor and replace the range and stovetop, and to paint all of the cabinets in the kitchen, including those that were not damaged by the fire, to ensure uniformity of color.  (Id. ¶ 11-12).  He testified that he did not prepare an estimate to replace all of Plaintiffs' cabinets because the fire damage was limited to only a few of the kitchen cabinets; that he included cleaning, but not replacement, of the double oven because Plaintiffs did not respond to his request to have an electrician determine whether the damage was caused by the fire and whether to repair or replace it; and that, based on his observations, he determined that the damage to the kitchen floor and refrigerator required cleaning, which he included in his estimate, but did not warrant replacement of those items.  (Id. ¶¶ 22-26).  State Farm retained Georgia Water and Fire Restoration for a second inspection of the loss, which it conducted on May 1, 2012.  (First Morris Aff. ¶¶ 10-11 & Ex. C).  The estimate prepared by Georgia Water and Fire Restoration indicated a similar scope of damage as Morris's estimate, and totaled $11,708.41.  (Id.).

Plaintiffs fail to show that State Farm's refusal to pay to Plaintiffs the additional $73,284.75 requested in their Demand Letter was frivolous or unfounded.[9]  Fredrics determined, based on his observations and information Plaintiffs told him, that cleaning of the entire house and its contents was required and that additional damage existed, including replacement of Plaintiffs' entire kitchen because "any repairs would not match the existing cabinets."  Fredrics's estimate supports, at most, that a bona fide dispute exists regarding the extent of the damage caused by the April 11, 2012, fire, and how Defendant was required to address the damage under the terms of the Policy.  That is, because conflicting opinions regarding the scope of damage and how to remedy it, Plaintiffs cannot show that Defendant did not have reasonable grounds to contest the amount of their claim and cannot show that Defendant's refusal to pay the full amount was frivolous or unfounded.[10]  No reasonable juror would find that Defendant's refusal was in bad faith.

---

[9]     Plaintiffs presented two estimates for kitchen repairs from other contractors. The first was for $32,000.00 and the second for $17,000.00, but both included upgrades to the kitchen. Fredrics's estimate for the kitchen and repairs, including substantial ones, to other areas in the home, was for $70,347.20.  There is thus a substantial dispute over repair scope and cost.

[10]     Plaintiffs argue that it was unreasonable for Defendant to refuse to pay for cleaning because, based on Mrs. Javits's testimony, it is undisputed that smoke filled the entire house.  The issue is, however, whether smoke *damage* occurred. That smoke travelled through the house does not necessarily require a finding of

The evidence is further that, after receiving Fredrics's estimate, Defendant attempted to continue its investigation of Plaintiffs' claim and sought to re-inspect the Property with Fredrics and a third-party fire mitigation company to determine whether Morris needed to adjust the scope of his estimate.  Plaintiffs refused Defendant's request, claiming that a re-inspection was not necessary and, later, that a re-inspection would be futile because they had already demolished the kitchen. To the extent Plaintiffs contend that Defendant's request for a re-inspection shows the inadequacy of Morris's previous inspection, Plaintiffs' argument is illogical and there is nothing to support, as Plaintiffs appear to suggest, that Defendant was required to simply accept Fredrics's estimate without further investigation. Defendant was entitled to rely on Morris's estimate, which was substantially similar in scope and price to the independent assessment provided by third-party contractor Georgia Water and Fire Restoration.  Plaintiffs' demand was more than $70,000 greater.  Regrettably, soon after receiving Morris's letter offering to re-inspect the home with Fredrics, Plaintiffs elected to demolish the kitchen and refused to allow a re-inspection.[11]  Plaintiffs' refusal to allow Defendant to

---

damage requiring cleaning, and the record is that three (3) inspections resulted in two (2) opinions that smoke damage did not exist.

[11]    That Plaintiffs "demolished" their kitchen suggests that, shortly after Fredrics's estimate was completed, they had already decided that they intended a full replacement of their kitchen.

re-inspect the loss is a further reasonable ground for Defendant to contest paying the demanded amount.  Plaintiffs fail to show that Defendant's refusal to pay the over $70,000 difference between Morris's and Fredrics's estimates was in bad faith, and Defendant is entitled to summary judgment on Plaintiffs' claim for bad faith.[12, 13]

c.     Negligence (Counts V and VI)

To support a claim for negligence in Georgia, a plaintiff must show:

(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or

---

[12]     That Plaintiffs stated in their February 17, 2014, Demand Letter that their actual out-of-pocket expenses totaled $36,750.22, further supports that Defendant was reasonable in refusing to pay the more than $83,000 requested in Plaintiffs' August 14, 2012, Demand Letter.  See Winningham, 708 F.2d at 661 ("That [the insurer] had a reasonable basis for disputing [insured's] initial claim of approximately $24,000 [for additional living expenses] is evidence from [insured's] subsequent reduction of the amount requested to $16,000 in her complaint and to $8,646.79 in closing argument.").

[13]     To the extent Plaintiffs' bad faith claim is also based on State Farm's denial of their request for Appraisal, Georgia law is clear that an appraisal clause in an insurance policy can only resolve a disputed issue of value, not liability, and that the scope of an appraisal—that is, the extent of damage caused by a covered loss— should be determined before the appraisal process can begin.  See, e.g., McGowan v. Progressive Pref. Ins. Co., 637 S.E.2d 27 (Ga. 2006); Anders v. State Farm Fire & Cas. Co., 675 S.E.2d 490 (Ga. Ct. App. 2009); Bell v. Liberty Mut. Fire Ins. Co., 734 S.E.2d 894 (Ga. Ct. App. 2012).  State Farm thus had a reasonable basis to deny as premature Plaintiffs' request for Appraisal before the parties could determine the scope of damage caused by the April 11, 2012, fire.

> damage flowing to the plaintiff's legally protected interest as a result
> of the alleged breach of the duty.

Burch v. Chase Manhattan Mortg. Corp, No. 1:07-cv-0121-JOF,

2008 WL 4265180, at *15 (N.D. Ga. Sept. 15, 2008) (quoting Bradley Ctr., Inc. v.

Wessner, 296 S.E.2d 693, 695 (Ga. 1982)).  However, "[a] defendant's mere

negligent performance of a contractual duty does not create a tort cause of action;

rather, a defendant's breach of a contract may give rise to a tort cause of action

only if the defendant has also breached an independent duty created by statute or

common law."  Fielbon Dev. Co. v. Colony Bank of Houston Cnty.,

660 S.E.2d 801, 808 (Ga. Ct. App. 2008).  Georgia law is clear that "[a]bsent a

legal duty beyond the contract, no action in tort may lie upon an alleged breach of

[a] contractual duty."  Id. (quoting Wallace v. State Farm Fire & Cas. Co.,

539 S.E.2d 509, 512 (Ga. Ct. App. 2000)).

In Tate v. Aetna Cas. & Surety Co., the insured asserted a negligence claim

against his insurer for "violating accepted standards in the industry," "using an

unlicensed and incompetent adjuster and personnel," "failing to use due care to

include all of plaintiff's losses under the law," "failing to properly inspect

plaintiff's losses and property," and "failing to properly consider plaintiff's

estimates of his loss."  253 S.E.2d 775, 776 (Ga. Ct. App. 1979).  The plaintiff

alleged that he suffered delay in processing his claim and sought to recover

damages for emotional suffering and his expense and time spent acquiring repair

estimates.  Id.  The trial court granted the insurer's motion for summary judgment,

and the Georgia Court of Appeals affirmed.  The court found that

> [e]ven where it is shown that the defendant's failure to perform
> resulted in great annoyance or hardship to the plaintiff, recovery in
> tort is available only if the insurance contract is within those certain
> classes of contracts that create a relation from which the law implies
> duties a breach of which will constitute a tort . . . .  [Although i]t is
> well settled that misfeasance in the performance of a contractual duty
> may give rise to a tort action . . . in such cases the injury to the
> plaintiff has been an independent injury over and above the mere
> disappointment of plaintiff's hope to receive his contracted-for benefit.

Id. at 777.  The court held that, "[i]f the duties in question arose at all, they arose

out of the contract.  All concern the insured's actions in settling under terms of the

contract . . . [and] at most, there was a breach of contract on the part of the

[insurer] by failing to pay the plaintiff the full amount of damages owed under the

terms thereof."  Id.

Here, Plaintiffs assert that Defendant negligently breached its "duty under its

insurance contract with Plaintiffs to perform certain duties investigating and

resolving Plaintiffs' claim," (Compl. ¶ 67), and that Defendant was negligent in

hiring, retaining, supervising and training its "agents."  Plaintiffs contend that

Defendant knew that its agents did not have the capacity to conduct claims

investigations, that Defendant failed to properly train its agents to handle the

investigation of Plaintiffs' claims, and that Defendant failed to properly supervise its agents including because it failed to detect the incompleteness, inaccuracies or incompetence of its agents' inspections, the "multiple duplicative and unnecessary inspection requests," and the "negligent and unfair claims practices engaged in by its agents."  (Id. ¶¶ 74-83).

Plaintiffs' negligence claims are based on the manner in which Defendant processed Plaintiffs' claim for coverage under the Policy.[14]  Defendant's alleged duty to Plaintiffs arises, if at all, under the Policy and thus can only support a claim for breach of contract.  Plaintiffs fail to support that Defendant breached any duty owed to them independent of the Policy.  See Tate, 253 S.E.2d 775; Camacho v. Nationwide Mut. Ins. Co., 2014 WL 1396427, at *15 (N.D. Ga. Mar. 31, 2014) (granting summary judgment for insurer on negligence claim because "no independent duty to handle the claims with care exists in tort under Georgia law");

---

[14]    To the extent Plaintiffs assert that they were harmed "beyond the mere breach of contract" because Defendant's negligence caused a delay in payment to Plaintiffs, and they incurred costs to hire a public adjuster, attorney's fees and litigation expenses, recovery for failure to timely pay a claim and for attorney's fees and costs is limited to a claim under O.C.G.A. § 33-4-6, on which the Court has already granted summary judgment for Defendant.  See Tate, 253 S.E.2d at 777; Leonard v. Firemen's Ins. Co. of Newark, N.J., 111 S.E.2d 773, 775 (Ga. Ct. App. 1959) ("The penalties imposed against insurance companies . . . for their failure or refusal to pay claims within a reasonable time after demand has been made are fixed by the provisions of [O.C.G.A. § 33-4-6]. This remedy is exclusive . . . .") (construing former § 56-706, the predecessor to § 33-4-6); Camacho v. Nationwide Mut. Ins. Co., 2014 WL 1396427, at *15 (N.D. Ga. Mar. 31, 2014).

 Arrow Exter., Inc. v. Zurich Am. Ins. Co., 136 F.Supp.2d 1340 (N.D. Ga. 2001) (where insured claimed that insurer was negligent in handling claims and training, retraining, and employing its adjusters, "based on the general rule precluding tort liability and the Georgia courts [sic] determination in Tate that the incompetency of adjusters and processors does not fall within the special exception, the Court must grant summary judgment in favor of [the insurer] on [the insured's] negligence claims against it."); Watson v. Zurich-Am. Ins. Co., 470 S.E.2d 684, 687 (Ga. Ct. App. 1996) (acknowledging general rule that there is no confidential relationship between an insurer and insured).  Defendant is entitled to summary judgment on Plaintiffs' claims for negligent claims handling and negligent hiring, retention, supervision and training.

> d.   Unfair Claims Settlement Practices (Count VIII)

Under the Unfair Claims Settlement Practices Act (the "Act"), O.C.G.A. § 33-6-30 et seq., insurance companies are prohibited from engaging in certain activities when settling claims with their insureds.  See O.C.G.A. § 33-6-34.  The Act provides that "[n]othing contained in this article shall be construed to create or imply a private cause of action for a violation of this article," and Section 33-6-34 does not support Plaintiffs' claim for violation of the Act.  See O.C.G.A. § 33-6-37.

Defendant is entitled to summary judgment on Plaintiffs' Unfair Claims Settlement Practices claim.

To the extent Plaintiffs appear to argue, for the first time in their Response, that O.C.G.A. § 51-1-6[15] provides a mechanism for them to assert a claim for violation of the Act, this argument was not raised in their Complaint and the Court will not consider it.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Although courts have construed additional allegations in a *pro se* plaintiff's response as a motion to amend the complaint, Plaintiffs have been represented by counsel throughout this litigation.  Compare Newsome v. Chatham Cnty. Detention Center, 256 F. App'x 342, 344 (11th Cir. 2007) ("Because courts must construe *pro se* pleadings liberally, the district court should have considered [plaintiff's] additional allegations in the objection as a motion to amend his complaint and granted it.") with Rule v. Chase Home Fin. LLC, No. 3:11-cv-146-CAR, 2012 WL 1833394, at *4 (M.D. Ga. May 18, 2012) ("Plaintiff is not proceeding *pro se,* and therefore this Court is under no obligation to construe these additional allegations as a motion to amend the Complaint.").

---

[15] O.C.G.A. § 51-1-6 provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."

Even if properly before the Court, Plaintiffs cannot assert a claim for violation of the Act under O.C.G.A. § 51-1-6 because causes of action—breach of contract and statutory bad faith—already exist to remedy the violations alleged, and, considering the unambiguous language of Section 33-6-37—that "[n]othing in this article shall be construed to create or imply a private cause of action for violation of [the Act]"—the Court declines to create one here.  See Thercy v. Allstate Prop. & Cas. Ins. Co., No. 1:13-cv-1099, Doc. 18 (N.D. Ga. Aug. 13, 2013) (dismissing insured's negligence claim based on violation of the Act because the Act does not create an independent duty); cf. Miller v. Gen. Wholesale Co., Inc., 101 F. Supp. 2d 1374 (N.D. Ga. 2000) ("It seems clear from the language of [O.C.G.A. § 51-1-6] that no cause of action is created where, as here, an express cause of action already exists;" express cause of action for disability discrimination already existed under Americans with Disabilities Act); Reilly v. Alcan Alum. Corp., 528 S.E.2d 238 (Ga. 2000) (on certified question from Eleventh Circuit, stating "the general tort provisions of § 51-1-6 and § 51-1-8 cannot be read so as to create a civil action for age discrimination based upon a violation of either § 34-1-2 or the ADEA," including because the legislature did not create a civil remedy for age discrimination under § 34-1-2, and Georgia law expressly prohibits a claim for wrongful termination based on at-will employee

agreement).  Defendant is entitled to summary judgment on Plaintiffs' Unfair

Settlement Practices claim.

        e.        <u>Punitive Damages (Count IX)</u>

Under Georgia law, punitive damages cannot be awarded for breach of

contract.  <u>See</u> O.C.G.A. §§ 13-6-10, 51.12-5.1; <u>Metro Complete Svcs., Inc. v.

Liberty Mut. Ins. Co.</u>, 372 S.E.2d 491, 493 (Ga. Ct. App. 1988) (where summary

judgment was granted for insurer on negligence claim, insurer was also entitled to

summary judgment on claim for punitive damages, even though material issue of

fact remained on breach of contract claim; punitive damages are not authorized in a

case arising out of contract).  Because Plaintiffs' only claim remaining in this

action is for breach of contract, Defendant is entitled to summary judgment on

Plaintiffs' claim for punitive damages.[16]

---

[16]    The Court finds that the testimony in Fredrics's and Plaintiffs' affidavits that Defendant has moved to strike do not create an issue of fact material to Plaintiffs' claims addressed in this Order.  Defendant's Motion to Strike and Plaintiffs' Motion to Appoint Expert are denied without prejudice.

    The Court notes that much of the testimony in Fredrics's Affidavit which Defendant contends is expert opinion testimony, does not appear to be relevant to Plaintiffs' breach of contract claim, Plaintiffs' only claim remaining in this action. If Plaintiffs intend to present at trial any of Fredrics's testimony which is the subject of Defendant's Motion to Strike or which could be considered expert testimony, Defendant may move *in limine* to exclude such testimony.  Plaintiffs are admonished that even an expert witness may not testify to legal conclusions, including the interpretation of an insurance policy, and thus opinions such as coverage, the parties' respective duties, and whether an insured "is entitled to" any

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand [45] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Oral Argument [32] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment [25] is **GRANTED.**  Defendant is entitled to summary judgment on Counts II-IX of Plaintiffs' Complaint.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike [34] and Plaintiffs' Motion to Appoint Expert [39] are **DENIED WITHOUT PREJUDICE.**

---

funds, under an insurance policy are not admissible and will not be allowed at trial, whether the testimony is offered by a fact or an expert witness.  See, e.g., Montgomery v. Aetna Cas. & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990); Nationwide Mut. Fire Ins. Co. v. Somers, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003) (en banc) (per curiam) (expert opinion as to an insurer's duty under a policy was not admissible); FCCI Ins. Grp. v. Rodgers Metal Craft, Inc., No. 4:06-cv-107, 2008 WL 2951992, at *3 (M.D. Ga. July 28, 2008) (expert opinion as to whether coverage applied under a policy was not admissible).

**SO ORDERED** this 26th day of August, 2014.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE